Good morning, Your Honor. Steve Rabin for the Plaintiff Appellant on this appeal. I'd like to take my full time without rebuttal, if I may. Judge Ware here committed error because he split the baby in half. He first held that we had sufficiently pleaded a deprivation of our right to a fully informed vote. That was the first part of his decision. And he said that if our allegations were true, then we had been injured, we had been harmed. He then made a 180 degree turn and he said that even if we won the case, which sounds odd because it sounds as if we should benefit from winning the case, if we won the case, the benefit would go to the corporation. It would go to the corporation and therefore, he said, this action, this complaint is derivative in nature. Because the benefit goes to the corporation, it's derivative in nature. We had to make a demand upon the directors to take action themselves before we commenced action. We didn't do it and therefore he dismissed the complaint. Now the odd thing about this case is that we claim that the second part of his decision was erroneous. My friends here claim that the first part of his decision was erroneous. Both parties claim the decision was erroneous for different reasons. I believe that this decision is a contradiction in terms and I respectfully suggest that as written, it cannot and should not stand. Well, Mr. Rabin, suppose we were to agree with you that this was really a direct action. It's just not a derivative action. It's direct action. Yes. The lady was entitled or the shareholder was entitled to an informed vote. Right. There were misstatements in the proxy material and therefore, they didn't get what they were entitled to. They were harmed to the extent that the obligation to give them a fair and full report was not met. Then the question is, all right, now what are your damages? And the lady comes forward and says, well, I think this is the case. Was this the case where she was arguing dilution? What damages was she arguing occurred to her because of the breach of this direct contract? It's not monetary damages. We are not asking for monetary damages. We are asking that the proxy, that the pension plan, that the stock option plan be voided and that another vote take place or not. She was deprived of her right to a full and fair vote. So she wants to have that right reinstituted. That was taken away from her. If that is, if that happens and they have a new vote. Right. And let's suppose the shareholders of the shareholders are now pretty well aware of all of this. And so they say, well, we don't approve the proxy plan, I guess. Yes. Or the stock option plan. Yeah. Then what happens? All those shares get canceled. Well, see, that, the Supreme Court has said, I think this Court has said, that's a job for the district judge to fashion a remedy which takes everything into account. The rights of the shareholders, the rights of the option holders, the rights of the voters are, the defendants were faced with this previously. And they made a tender offer. And that cleared it up. The judge doesn't have to immediately say all the options are canceled. He has to, he has to fashion it because this is an equitable relief. And the Supreme Court has said time and time again, and I believe this Court has said time and time again, he must take into account the rights of all the different people. And perhaps he can suspend it. Perhaps he can keep the options in place and say, now let's have another vote. If they approve it, then there's no harm done. If they don't approve it, well, then I'll deal with it then. But that's a job for the district judge. It's a question of equity. It's not a question of, you know, a specific amount of damages. Well, it is and it's not. I mean, you still have to have some practical form of relief in this kind of case. And just saying, okay, to the district court, go figure it out, really isn't much of a solution because to use the term, as Delaware does, the egg's been pretty scrambled at this point. How do you unscramble the egg here? Well, they unscrambled the egg. They were faced with this before and they unscrambled it because they made a tender offer. That was the previous stuff that they didn't disclose. And there was a charge of 900, practically a billion dollars. Yeah. So they made a tender offer. That's one way of doing it. I think — I'm not sure that it's appropriate for this Court to get involved and to say, well, this is what you should do. The judge has to take — No. I just want to see — I just want to see there's a clear path to some relief that's practical and — Oh, yes. — in this case. Because you're not alleging economic injury, per se, to your client. This isn't a damage case that you confess. I would say — I don't know the tax consequences of all this. So that's a problem. But one way of dealing with it would be just simply let's have another vote. Let's see if they put everything in that should be put in and let's have a full and fair disclosure. And now the people will vote on it. That's one way of doing it. All right. Let's suppose the vote goes against the stock option. What happens then? Well, then the company is faced with trying to do the best it can. It may — they could have a tender offer, the same as they did before. They can — but I don't think that the difficulties that are posed by such a situation should cause this Court to throw up its hands and say, we're not going to give you a remedy for a false or misleading proxy statement. I think the judge is ingenious enough to take care of it. When you have a merger — when you have a merger and the proxy statement is false or misleading, no, they can't unscramble the eggs. Right. I mean, what I'm — I'm not arguing remedy just in a practical sense. I'm just trying to follow Delaware law, which says, you know, in the merger cases to which you've alluded, you can't undo the merger. No, but they have alternate remedies. They award damages. They do different things. They don't just throw up their hands. They don't do that. And the Supreme Court has said that you have to fashion the remedy to fit the situation, and you take into account the rights of the option holders. We don't know how — some of these options may not be worth anything. So we'd have to look at that. So because it would be difficult doesn't make it impossible. And I don't think that there should be — that there should be a wrong without a remedy. That's not — and I think the — a judge where? The district court. I disagree with him. But I think he's capable enough to — to fashion a remedy. And, of course, he would get input from presumably both sides, and we'd try to do something which is fair and reasonable under the circumstances. I don't think it's necessary for us to throw up our hands and say, well, it's done. They committed wrong, it was done, and we can't do anything about it. I don't think that's the right way to go. Well, what about the leave to amend? Well, we — that's — I mean, it seems to me — I mean, if you leave — oh, go ahead. That shows, I believe, really the fallacy, the underlying error that Judge Ware committed. A court — following his reasoning, all we had to do was take out the provision that the option should be canceled, and just put in such other and further relief as to the court seems appropriate. Void the option plan, and then such other and further relief. Then, presumably following Judge Ware's decision, following his reasoning, we would have a direct action. What Judge Ware overlooked was he talked about the benefit to the corporation. He overlooked the benefit that would accrue to my client and to the other stockholders, which made it a direct action. That is, their right to a full, fair, transparent, untainted election. That's no lesser right because it's not translatable into money damages. So I — I think my client, the stockholders, have been wrong. I think this Court, the Supreme Court, has constantly emphasized the importance of corporate suffrage. And I don't think this Court should overrule its own precedents. We've cited three cases in which this Court has said time and time again there is a direct cause of action for violation of a proxy, for a false or misleading proxy. There is also a derivative cause of action. But we chose to go directly. And I think that should be respected because it's clear — see, my time is running out — because I think it's clear that the proxy statement was — not only was it misleading, it was false. They lied to the people. They said that there was no backdating of options. Note 10 to the accounting statements made that statement. Not in so many words. They said, well, options were never exercisable except at market value. That is, at the price that the stock was selling at on the date of the grant of the options. Well, in effect, they were saying there's no backdating. So they said there's no backdating. They lied. I think we — I think we understand that personal argument, and you are about a minute over. So in fairness, which we're all interested in, we better turn to your point. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court. My name is Stephen Guggenheim, and I represent the defendant appellees. Counsel just said that the precedent say there may be a — the Court says that the disclosure violations may give rise to a derivative action or a direct action. But the problem here is maybe isn't must be. It isn't that it always gives rise to a direct action. And the Supreme Court of Delaware in Tooley was very clear that you look at both things. You first look at who suffered the alleged harm, the corporation or the stockholder, and who has — between the corporation and the individual would receive the benefit of that remedy. So what I'd like to focus on is the issue of remedy, which goes directly to whether there is any kind of a direct claim here. Well, I'm not sure that the two are necessarily joined. I mean, it seems to me under Delaware law, the shareholder has a right to bring a direct action for failure to — for deprivation of the right to cast an informed vote. The fact of a remedy may provide an additional or a different reason for dismissing the suit, but — Well, actually, Your Honor, in the Tyson case, for example, the Court said there was a disclosure violation. And then the Court went on to see whether there was, in fact, any kind of direct relief that could be granted. Right. So I think that it is important to look at whether there were — whether there is any kind of equitable relief here, since we've — counsel has made it clear they're not pursuing money damages that could be given in this sort of an action. And the first point I'd like to make is that it is clear that if the plaintiff were successful in getting the equitable relief she seeks, voiding the vote on the option plan and invalidating the options pursuant to that plan, that really is a corporate remedy. And the plaintiff's response is, well, don't look at what the result of voiding the vote would be. Let's just look at restoring my right to vote. And plaintiff made the same argument to Judge Ware in the district court. And the judge asked a very good question, at least I believe it was a very good question, which is, if the purpose of voiding the vote is not to rescind Juniper's 2006 stock option plan, then what is it that the Juniper shareholders are voting on? But I'd like to actually speak to two other points that I think were touched upon by counsel. One of them is that there really is no equitable remedy available at this point. A number of cases, and Your Honors alluded to them, have talked about the fact that it's simply beyond a court's power to unwind a corporate act that happened years before. And in this regard, I think it's very important to look at the plaintiff's own lack of diligence in pursuing any kind of equitable remedy. The vote here took place on May 18, 2006. Two days, three days later, roughly May 22, the company, Juniper said, we're starting an internal investigation into whether we've backdated options or whether options were misstated. And the plaintiff didn't seek to void the vote at that time. In fact, she did nothing in response. By the summer of 2006, there were both derivative actions filed against Juniper and a class action. The class action is still pending. The derivative action, all rising out of the same transaction or same issue, was settled, which is why part of the reason the plaintiff can't now pursue a derivative action. In August of 2006, Juniper said it had to restate. Still, the plaintiff did nothing. It was not until March 28, 2007, a year after Juniper shareholders approved this plan, that the plaintiff brought this action. So to a large extent, any inability to fashion equitable relief at this point is a problem of plaintiff's own making. There are two other things. What remedies are being sought in the class action? In the class action, they're seeking damages. There's a 10b-5 claim. So there's not a section 14 claim. There was, in the derivative action, a section 14 claim challenging this very proxy. They were not seeking, however, to unwind Juniper's option plan. I think there are two other points I'd like to make before I close. The first is that we've made this point to some extent. The plaintiff cannot pursue equitable relief here because invalidating this plan, if this plan is invalidated, would affect thousands of innocent Juniper employees worldwide who received options under this plan. And there are indispensable parties. But ultimately, I want to step back and look at one question that I think really should inform this Court's decision, which is this isn't, as the Court said, a derivative action. This isn't a class action. This is a suit brought by the holder of 140 shares of Juniper stock. And why should the holder of 140 shares of Juniper stock have the right to vote, void the vote of every other Juniper shareholder on a stock option plan that isn't even alleged to be issuing bad options or misstated options? In fact, the conduct that the plaintiff is complaining about and the question that the plaintiff is asking is, well, if the plaintiff did seek a TRO, why would   I mean, that's not a bargaining issue. Pardon me? You're not arguing that there's a — the fact that the quantities of shares has anything to do with it? No. No. I'm saying that effectively this plaintiff had a remedy that she could have pursued in a normal course, which is she could have submitted a shareholder proposal. Oh, sure. And then it could have sought a TRO. I mean, there's shareholder to shareholder. That's true, Your Honor. But the question is, she's trying to affect the vote of everyone else. Yeah, that's true. There's no doubt about that. Yeah. Thank you, Your Honor. I have nothing further. All right. Any further questions? No. All right. Thank you both for your arguments. The case heard will be submitted for decision.
judges: Aldrich, Thompson, Thomas